Case number 13-0988, People v. Carl McCoy. Would the lawyers who are going to argue please introduce yourselves to the court. Rebecca Cohen from OSET on behalf of Appellant Carl McCoy. Are you going to reserve some time for rebuttal? Yes. How much? A couple minutes. Good morning, Your Honors. Peter Fischer, Assistant State Attorney on behalf of the People. Let's proceed. May it please the Court. This morning I will focus on two issues. First, that the State did not prove McCoy guilty beyond a reasonable doubt. And second, that the State committed reversible error when it insinuated on cross-examination that McCoy threatened to kill Culverson's family, knowing that it had no proof for that accusation. Do you think they preserved that error? Yes. How? When the question was asked, the defense counsel... But in the motion for the post-trial motions, they say it happened in closing argument. And the judge didn't remember that happening in closing argument. Is that correct? That's correct. So can they just say that this error occurred at any point and that's sufficient to preserve it? I think that the content of the post-trial motion preserves the error. That it was specific enough? That it was specific enough. Defense counsel alleged that the State erred in accusing McCoy of threatening to kill Culverson's family while he was in the car and that there was no evidence to support that. That's enough to raise the issue before you. And the trial court addressed the issue and the State addressed the issue on the hearing on the motion for a new trial. I think that's sufficient to preserve it. So let's say we find that that was sufficient to preserve it. I'm sorry, I know you're going on AF. It was sufficient to preserve it. Is that error sufficient to reverse the whole thing? Yes. That error is sufficient to reverse the whole thing. McCoy should get a new trial based on that error alone. Of course, there's lots of errors in this case. But that error, the accusation in that question was so prejudicial to McCoy, so outrageous, that it really colored the whole trial. This is a case where there's very little evidence. You know, the only direct evidence, well, there's no direct evidence that McCoy shot Culverson. And there's only weak circumstantial evidence only relating to consciousness of guilt that McCoy shot Culverson. And that circumstantial evidence is not enough to infer that McCoy shot Culverson. All the evidence presented in this trial is that McCoy was in the driver's seat of Culverson's car, wrecked car, and that Culverson, wounded, was in the passenger seat. Well, he ran away. He turned him out to all the police. He lied to the police when he did get picked up by DNA evidence. But all that is just consciousness of guilt evidence, not evidence that – And this is especially true given the absence of other evidence. We have no idea where the shooting occurred. We have no idea when. You know, we have an inexact period of time of when the shooting occurred, and we don't have a motive. There's no reason why the shooting occurred. But the state doesn't have to prove a motive. That's correct. It's not an element of the crime. But it helps prove the elements of the crime. It helps prove that McCoy shot Culverson without a motive and in the absence of any other evidence. It's really not enough to prove that McCoy shot Culverson. Detective Forberg admitted that he didn't know where the shooting occurred. It could have occurred where the accident occurred at near 66 Lincoln Drive, but it could have occurred closer to where Culverson was last seen by his sister and his nephew at 43rd and Cottage Grove. We don't know if the shooting was inside the car or outside the car. So we don't even know the route that Culverson took from 43rd and Cottage Grove to 66 Lincoln Drive. They looked at eight or nine pod cameras. And he didn't appear on any of the pod cameras. We don't even know where Culverson was going. We have some evidence that he was going to his brother's house for barbecue, but it seems that his wife thought he was coming home. It's a wrong route. It's an incorrect route if he's going to his brother's house. Right. And, again, we don't even know when the shooting occurred. We have a period of time. We know that the accident occurred at 925, and his sister testified that she was at his house at 9 o'clock. But we don't know what happened in that 25 minutes. And there's some evidence in the record that it only really takes 11 minutes to get from 43rd and Cottage Grove to 66th and King Drive. The state put a map, Exhibit 44, into evidence, and Google Maps says that it takes 11 minutes according to that exhibit. Detective Forberg said that it could have taken 20 to 25 minutes, but we just don't know. And, again, we don't know why. There's no relationship between – there's no evidence of any relationship between Culverson and McCoy. All of his family members testified that they didn't know McCoy. They didn't know that Culverson knew McCoy. There's no evidence about – that anything was taken from the car. So we don't – we just don't have enough facts in this case to really – to prove that McCoy shot Culverson. Could we move on to your excited utterance issue? Sure. Okay. In your excited utterance issue, you seem to think that it's sufficient that the trial judge erred in not allowing his statement saying that the defendant wasn't the shooter. The EMT asked him, was the person in the car with you the one who shot you? He said, no, that's what you want in, right? Yes, I would like that in. And so the trial judge said, no, he can't have that in because his statement immediately prior to that was, have you been shot? And he also said no to that. That's correct. How does that not bring into question his entire credibility of what is going on? How is that statement reliable if he doesn't even know whether he was shot or not? How is the statement that he – The trial judge said that she didn't find the statement reliable to allow it in. Right. How is that an error? If he doesn't even know he was shot, how do you allow any statements he says immediately after that? So the task for excited utterance doesn't consider the content of the statement. It still needs to be reliable. The reason we have excited utterance is that we believe the circumstances surrounding the statement render the statements reliable and then they should be admitted. But it was in response to a question. So how is that error for her to say these statements aren't reliable? They don't even qualify under excited utterance. They definitely don't qualify under a dying declaration. I disagree. What's wrong now? I'm still listening. Yeah, so under excited utterance there has to be a spontaneous event and as a result a statement is made. It doesn't matter that someone asks a question. It can still be a spontaneous declaration even if someone asks a question. So he's saying I wasn't shot. How is anything he says after that in any way reliable? When he's had a gunshot wound or even the defense attorney. Three. Three gunshot wounds, right. You know, it's up for the jury to decide the weight of the statements. The jury should have decided. But isn't a trial judge to determine what evidence is sufficiently reliable for the jury to hear? Yes, I agree. But I think that the test for excited utterance is you look at the circumstances around the statement. Was there a startling event? Yes, there was a startling event. Do his statements relate to that startling event? Yes. Did he have time to fabricate the statement? No, he didn't have time to fabricate. Then it goes to the jury. The jury can decide, well, the first part of that was incorrect. But the second part of that is very relevant to the evidence. What if the evidence shows that he's delirious? Is it still reliable? Well, that's not the evidence that we have in this case. I'm sorry. Why isn't it? What you just said is that it has to relate to the circumstances. Right. But the statement doesn't relate to the circumstances because he was shot three times and he says he wasn't. I mean, that's the sticking point for me. That I know that maybe one of them is the startling event. Like you said, we don't know when it happened. But his statement doesn't relate to what just happened to him or happened to him within 25 minutes. I agree that the first part of the statement is problematic. But it's really the role of the jury to decide this relevant evidence. And the State could have made these arguments that you're making. It wasn't the trial court's role to The judge has to determine whether it's admissible. They have to look at the But based on the test for excited utterance, it was admissible. That's our position. Let's move on to the admission of the attempt murder, if nobody has any other questions on that, on the attempt murder, the prior conviction. Correct. Yes. So our argument is that it was highly prejudicial in this case where there's very little evidence. And there's no motive. That defendant had been previously convicted of attempt first-degree murder. Signals to the jury that maybe there is a motive. Maybe this time he finished what he But you're not contesting that the statutory guidelines for prior conviction were met, right? They didn't violate any of the statutes. No, we're arguing that the fact that it was an attempt first-degree murder, its prejudice outweighed any probative value. But do you think, point somewhere to me, where it would fall under Pruitt, where it says they harped on it. They kept harping on the fact that he had an attempt murder. I saw where they brought in the conviction, and then they specifically instruct the jury during the closing argument, the state instruction, that you can't consider this as he's more likely to do it this time. Well, I think it's really the closing argument where the prejudice to McCoy comes out. You know, on the rebuttal closing argument, the state repeats over and over and over again that McCoy is a liar, that you can't believe anything he said. And then in that context, they mentioned the attempt first-degree murder conviction. And given that there's very little other evidence in this case and no evidence of motive, that's why it's so prejudicial. This case in particular is an exception to the rule, because there's so little evidence that proves that McCoy shot Culberson. So it's an exception to the rule. You're saying that the rules as they apply, the trial judge did not err. I'm saying in this case, it was so highly prejudicial that the trial court did err. So, no, it's not. It's part of the rule. I mean, it just goes to, for pages and pages in the transcript, the state discusses over and over what a liar McCoy is. And that's really the central part of the, because they didn't present very much evidence, this case came down to the credibility of McCoy. And this piece goes directly to that. But because there's very little other evidence, it's so prejudicial, his prior conviction. With that, if the court has no other questions, I'll save my time for Rebecca. Thank you. Thank you, and good morning. May it please the court. I'll start with, in the reverse order that the defense did, there is no exception in Montgomery for exceptionally close cases, if this were an exceptionally close case. Well, what Pruitt says is that you can't harp on the prior conviction because they're more likely. I counted up, just in the opening post, three times that the state referred to him as an attempt murder conviction. They did, Your Honor. And each time, as Your Honor pointed out earlier, the state first prefaced their argument with a discussion. Yeah, but that was for her, Mr. Fisher. Now it's for you. Yes. So it's a little bit harder. And they prefaced their argument with actually reading the instruction itself and explained that means you can't take that. And they said, I agree with the defense counsel. What that means is when you get back there, you heard he is a convicted felon, a convicted felon for attempt murder. You can't go back to that jury, what the instruction says. You can't go back to the jury room and say, well, he's a bad guy. He committed that back then, so he must have committed this. You can't do that. What you can do and what you should do is, and what the law says is it affects his credibility. You go back there and you say, well, he's a convicted felon. He's a convicted felon of attempt murder. Convicted felons are not believable. That's almost funny. Oh, my God. Well, convicted felons are not believable. They tell you anything to get away with it. Try and get away with it. That's what felons do. That's why the law exists, because it affects their credibility. So he's an admitted liar. And that went to the fact that the defendant, in fact, admitted that he was a liar on the stand. Which is, I don't have a problem with the liar part, but I reread Pruitt this morning, just to make sure I was reading that correctly. This is a pretty close case. I think everybody can agree on that, but it's a close case. And Pruitt specifically says you keep harping on exactly what the crime was, and it's very similar to the crime in this case. It has a tendency to be more prejudicial. Well, no one says even if it's the exact same crime, you can still admit it. So this isn't the exact same crime. This is attempt murder, and then we got a murder. Well, yes, he was this time. But as I said, Mullins said that you can introduce the exact name of the crime, and this judge properly went through the Montgomery factors. She weighed the prejudicial effect against the probative value, and she did that properly. She relied on the people's motion, which, again, by now wasn't in the record, but she did rely on that. And there's no evidence that the judge abused her discretion in admitting the named felony. Once the named felony is admitted, it is part of the evidence. Did he have a theft conviction, if I recall this correctly? I don't recall if he had a theft conviction or not, Your Honor. But, again, as I said, the arguments in that. I think the defense's argument was you could have impeached him with a theft conviction, showing that he was untrustworthy, and you didn't need to use the attempt murder conviction. I believe that was their argument. And, again, the Supreme Court's also rejected the notion that you could only go to theft, to crimes of dishonesty. That's not what we're saying. If he had a theft conviction, it goes directly to the issue of his credibility. An attempt murder conviction on a circumstantial murder conviction, I mean, the probative value of that versus his prejudicial effect, that's the point. If he had a theft, it goes directly to the issue. Why use the attempt murder, which is clearly more prejudicial than a theft? And it is more probative that he's a convicted felon. I mean, the Supreme Court's held that before. Montgomery itself talks about felonies and the notion that it can only be crimes of dishonesty has been disavowed by the court. I understand that. I'm just looking at the facts of this case. I was at 26th Street for 18 years. Okay, so I'm talking about weighing the probative value versus the prejudicial effect when it's almost the same kind of case. And you've got so little evidence. Let's talk about the so little evidence. Let's go to the issue, the first issue on the state's attorney's comment. There was absolutely no basis for that question. So there's two parties to that conversation where the state's attorney says to the defendant, and you threatened to kill his family if you ever said anything. I'm paraphrasing, but that's the gist of it, right? Yes. Okay, so he says that there's only two people who are parties to that conversation. The dead guy, who they've had an extensive hearing on his dying declaration. So we know that they had no statements from the victim in this case asserting that. And they had, the state's already put on their case. We already know exactly what the state's evidence was, and that would have been their prima facie evidence of this crime. So we know that the state had no evidence of that. So there was absolutely no basis for the prosecutor to ask that question. Is that correct? I would disagree. There's a basis in logic given the course of how the cross-examination had gone. You have to remember what was going on here. It was the defendant who goes to the police station and lies to the police, saying he was never in that car and doesn't know this victim. And he admitted on the stand that he lied to the police. So we know that he's a liar. And then he comes on the stand and he gives this Good Samaritan story, which has got many holes in it. And the state's attorney was pointing out several of the holes. Like, you know, you're going the wrong direction to the hospital. How could you not say anything to this guy? All of a sudden, this guy, you're moving him along the side of the car. He's up against the car. There's no blood against the car. And the victim was much larger than the defendant. And the defendant would have had to, you know, push him around the side of the car. There's no blood there. So there's a lot of things in the defendant's story that make no sense in and of themselves. One of the things that makes no sense in and of itself is the fact that, as we know from the victim, the woman from Minnesota who happens to actually be a Good Samaritan, and she calls in, calls the police. But she says that she sees the defendant get out of the car, the driver of the car, and lean in and is talking to what becomes the victim. She doesn't know that anybody's been shot. She just thinks there's been a car accident. But she says there appears to be a discussion taking place. Then the defendant grabs a coat and some bottles and tells her not to call the police. And then he runs away. I had to call an ambulance. But to call an ambulance. I just shot somebody. Call an ambulance. Yeah, well, he certainly did tell her not to call the police, call an ambulance. I mean, he knows that she's seen there's a guy hurt in the car. Somehow there's airbags deployed. So are you telling us this is a reasonable inference from that? Is that what you're telling us? Yes, I think it's a logical inference. Because what's happening is he's said that he hasn't asked this guy anything, hasn't had any discussion with him, and then he gets out of the car. Let me stop you for a minute. When an assistant state's attorney completely makes up a declaration by a dead victim, that violates every principle upon which our justice system is based. This is America. We don't do those kind of things, make-up stuff. There's no inference here. Who are you trying to fool? No, this is a logical inference. The defendant... I mean, I had one case when I think you were the state's attorney who justified calling an innocent man a Nazi when he had nothing to do with the Nazi party. Weren't you the guy who said that? No, I didn't justify it, but I indicated that it was not reversible error in that case. Yeah, not reversible error. Yes. In this case, two questions are asked. The defendant says no. And, again, back to the logical inference of what was happening there. The defendant claims that he reached into the car and he says, you're cool, bro, and then runs away. This is the first thing he said to this victim. Not who are you, what happened, how'd you get shot, anything. And that is an unbelievable statement. So according to the state's attorney, it was a more likely scenario that the defendant would say something like, isn't it true that you threatened to kill the victim's family? So it was just, we're going to throw this out there and see what you say. And hopefully the defendant would say, yes, I did threaten him. Was that the game plan? Well, the game plan was to see, in fact, if the defendant said that because it was a reversible instance. Yeah, but the person can't do that, Mr. Fisher. So, in this case, tell me what you have other than presence and he lied to the police. Is there anything else you have in this case? Well, I certainly think that he's obviously present. He lies about his presence. He then tells a, you know, gives a false exceptory statement, which the Supreme Court has said is certainly circumstances of guilt. There's not one witness. There's no statements that could possibly link to him other than the state's attorney's made-up statement. Other than that, there's no ballistics, there's no gun recovered, there's no motive, and there's no connection between these two. Is there anything that I'm missing? No, Your Honors, but given the fact that he was running away from the scene, that he lied to the police about it, and he admitted he had every opportunity to tell the police this nonsense story, that when he got on the stand, he admitted, yeah, I've read everything that the witness has said, and I've read the grand jury transcript, I've read the police reports, I'm aware of what's in there, and so he tailors his testimony exactly to what he knows the police or the state's attorney's going to put on. But back to the logical inference. The main point is that these are two questions. The defendant says no to both. And the judge overrules the objection, giving the jury the impression they're going to hear that this man threatened to kill the deceased family if he called the police. Well, I mean, the jury also would know there was no one that could have said that because the only person that could have said that is dead. So the jury would not be expecting someone to come in and say that's what he said because no one could have actually heard the statement. But the case law talks about the fact that if you have an error in questioning, presumed error in questioning, it has to be substantial, repeated, and definitely prejudicial. There's two questions. The defendant says no to both. It's not followed up in argument. And ultimately, when you're dealing with the credibility of a person who has already admitted that he is a liar, been shown to lie previously, tells a hokey story on the stand, is impeached with a prior conviction, his credibility, this really was not the straw that broke the camel's back. Now, what was the straw that broke the camel's back? There was none. The camel's walking. The camel's fine. Turning to the dying declaration slash spontaneous utterance, both the exceptions under the hearsay rule for dying declaration and spontaneous utterance have three components. None of the three components are present here. Under dying declaration, the declaration has to pertain to the circumstances of the homicide. The victim says he wasn't shot, so it doesn't pertain. Declarant must believe that death is imminent. Well, if he says he's shot, there's no evidence that he thinks he's dying. And the declarant must possess mental faculties sufficient to give an accurate statement about the circumstances of homicide. And, of course, the fact that he says he's been shot when he hasn't been shot when he's not shot, that calls into question. And the same is true for the spontaneous declaration. There has to be an occurrence sufficiently startling to produce a spontaneous, unreflecting statement. Well, here there's two occurrences. He's shot and he's in a car accident. Being in a car accident isn't the issue of the case. Being shot is. He denies that he's been shot, so he denies the existence of the spontaneous event of the startling event. The second issue is there must be an absence of time for the declarant to fabricate. We have no idea. They're pointing out that we have no idea when he was shot, so we don't know about the absence of time. And, of course, the statement must relate to the circumstances of the occurrence. But, as I said, the victim denies the occurrence that took place, so it can't relate to the circumstances of a non-occurring event. For the reasons that we've stated in our brief and for the reasons we've stated today, we'd ask that Your Honors affirm defendant's conviction. I had one other question. Yes. Taking all the errors aside, I want you to give me your best case for why the state proved him guilty beyond a reasonable doubt. Well, we have a man who's running away from a car where another man's been shot. As that man is running away, he's throwing things, bottles, and he's got his jacket. He's running away. He tells an eyewitness, don't call the police. When that defendant is later linked up through the airbag deploys, somehow his DNA gets on the airbag itself. Defendant is found because of that. He's got a chance to say, explain everything, give his whole good Samaritan scenario, and he doesn't do that. He makes this statement that I don't know this guy, I wasn't in his car, I wasn't there. Then when he gets to trial, he gives, I would argue, yet another false expropriatory statement in which he details where he was, can't remember the guy's names, we don't use last names, and then there's this story of coming on this man who happens to be standing there in the street with his car running and bleeding, and he brings him around the side of the car. So that consciousness of guilt is extremely strong in this case, one of the strongest I've seen, and therefore we did prove him guilty.  Thank you. Thank you. Rebuttal. Just quickly, your honors, the state cites to no cases where consciousness of guilt is enough to prove someone guilty beyond a reasonable doubt of first-degree murder. And I would say that the state's characterization of McCoy's testimony is just wrong. He testified credibly. His story makes sense. He came upon Culverson. He didn't have a phone. He decided the fastest way to get his help was to drive him to the hospital. He went a reasonable way to the hospital. He has clear details about where he was going and what he was doing, and the state presented no evidence that contradicted his testimony. In fact, patient's base testimony supported his testimony about what happened that day. The only other thing I would say is that... You don't find it a little bit odd that he'd find a guy bleeding on the side of the road, move him into the passenger side, drive erratically to crash, and then as soon as they crash, he scrambles out of the car and runs away? You don't find that story at all, maybe? Well, I'm not saying he made the best decisions that day. He admits he was drinking, and he really thought he made a spur-of-the-moment decision to try to help this guy. And if he had gotten to the hospital, he would have been in a very different position. But unfortunately, he crashed the car, and at that point he realized that he was a convicted felon in this car with someone who had been shot. He told patient's maze to get help for him, and he ran away. He didn't trust the police, and I think that's reasonable given the situation and given his background, and it was reasonable for him not to trust the police later when he was arrested and interrogated about this crime. The state is only relying on this consciousness of guilt because they have not proven that he shot Culberson, as their heavy burden requires. The only other thing I would say is that there really is no reasonable basis for the question, did McCoy threaten to kill Culberson's family? It's a very specific threat. It's not just, did you threaten to kill him? It's his family, and we know from the evidence that there's no relationship. So it really was prejudicial because it goes to motive in this case where there's absolutely no motive. So for the reasons in our brief, we request the relief that we've asked for in our briefs. Thank you. Well, thank you very much. I think the briefs were very well done. The lawyers gave terrific arguments here, and we'll take this case under advisement, and the court is adjourned.